## H. Rilling v. Caroline Schultze et al.

### No. 1094. Decided March 31, 1902.

**1.—Fraudulent Conveyance—Creditors and Purchasers.**

A conveyance or mortgage by a fraudulent grantee to one having notice of the fraud is void, as against creditors existing at the time of the first fraudulent conveyance, except where the mortgagee or grantee is himself one of the creditors entitled to attack the first conveyance. (Pp. 356-358.)

**2.—Same—Burden of Proof.**

The burden of proof is upon one knowingly taking from a fraudulent grantee a mortgage to secure his judgment against the fraudulent grantor, to show that the judgment was for a debt existing at the time of the fraudulent conveyance. (P. 357.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Bexar County.

Caroline Schultze sued Rilling and others, and appealed from the judgment, Rilling assigning cross errors. On its affirmance both parties obtained writs of error.

*Paschal & Ryan,* for plaintiff in error Rilling.—The trial court having found that plaintiff's (appellant's) claim is based upon a dormant judgment in personam against H. Schultze, Jr.; that the same fixed no lien, but simply provided for its collection by execution; and that the claim of H. Rilling is bona fide and secured by an instrument construed to be a mortgage, it erred in decreeing that plaintiff's claim be paid in preference to that of said Rilling. Rev. Stats., 1895, arts. 3289, 3290; Evans v. Frisbie, 84 Texas, 343; Muller v. Boone, 63 Texas, 91; Rev. Stats., 1895, art. 2326a.

The court erred in decreeing a preference claim in plaintiff to secure amount due under judgment of June 25, 1896 (Caroline Schultze v. H. Schultze, Jr.), because said Caroline by warranty deed executed and delivered, afterwards released and conveyed the property claimed by H. Rilling, and therefore all interest owned by her in such property passed thereby, whether the same be by virtue of said judgment or otherwise.

That therefore she waived any right to enforce a previously rendered judgment against said property so subsequently conveyed by her by warranty deed. Robinson v. Douthit, 64 Texas, 101; Lindsay v. Freeman, 83 Texas, 263; Satterwhite v. Rosser, 61 Texas, 173; Mays v. Lewis, 4 Texas, 44; Burkitt v. Twyman, 35 S. W. Rep., 421; Miller v. Railway, 132 U. S., 662; 19 Am. Dig. (Century ed.), 2030-2037, in which all the American law is collated.

*Geo. C. Altgelt,* for plaintiff in error Caroline Schultze.

GAINES, CHIEF JUSTICE.—This case came to the Court of Civil Appeals upon the trial judge's conclusions of fact and law, no statement of facts having been approved, filed, and made a part of the record.

The following is a statement of the case made by the Court of Civil Appeals, including, in a condensed form, the facts as found by the trial court, and it is sufficiently full and accurate for the purpose of this opinion:

"This suit was brought in the District Court on September 4, 1900, by plaintiff, Caroline Schultze, divorced wife of H. Schultze, Jr., against H. Schultze, Sr., H. Rilling, and H. Schultze, Jr. The last named died before trial, and by the amended original petition his executrix was made defendant in his stead. By this pleading, plaintiff sought to recover a money judgment against H. Schultze, Jr., a decree canceling certain conveyances, and for the appointment of a receiver or trustee. Plaintiff's debt as alleged consisted of a judgment rendered in 1896 in the divorce proceeding between herself and husband, by which she was decreed the care and custody of their only child, Ruth, and the sum of $12.50 per month for the education and maintenance of the child, payable on the first day of every month beginning with the 1st day of July, 1896, which debt plaintiff alleges amounted to $587.50 at the end of September, 1900; and her prayer asks for this sum, already accrued and to accrue, with interest; also for cancellation of certain deeds so far as her claim is concerned; also that possession and management of certain property be vested in a receiver or trustee who shall be directed to manage said property for the best interest of all parties hereto; that from the income of the property the receiver shall, after paying all necessary expenses, pay petitioner's debt, and thereafter pay the said monthly allowance until said child shall attain her majority or marry or die, and that all defendants be enjoined from interfering with the management and control of said property, etc.; and if it be found that the net income of the property is not enough to pay petitioner's debt and future allowances, that sales be made by orders of this court for such purpose. If not entitled to this form of relief, she prayed that the conveyances be annulled and the property sold to satisfy her claim by orders of this court and payment of her future installments of allowance provided for out of the fund.

"The case was tried by the judge, who filed his conclusions of fact and law. The conclusions of fact are lengthy and it will conduce to a proper understanding of the issues for us to state the material facts. .

"The judgment of 1896 divorced plaintiff and H. Schultze, Jr.; partitioned between them their community property, plaintiff assuming to pay all outstanding taxes and all liabilities against the community estate, except a note to H. Rilling for $500 (and one or two other claims not necessary to be here mentioned), it being understood (so stated in the decree) that H. Schultze, Jr., should discharge said debt to Rilling which was secured by a deed of trust on what was known as the Presa street property, in San Antonio. In this partition he received certain lands in Medina County and what is known as the Presa street property, besides 16 lots in San Antonio. This divorce decree awarded the child to Caroline Schultze and adjudged in her favor against H. Schultze, Jr., for the future maintenance and education of said child, the sum of $12.50 per month, payable on the 1st of each month beginning July 1, 1896. This judgment gave no lien on any of H. Schultze, Jr.'s, property to secure said payments and merely provided for its collection by executions to be issued by the district clerk. No execution was ever issued on said judgment. H. Schultze, Jr., died October 1, 1900, leaving a will probated in Bexar County in November, 1900, Louise Schultze qualifying as executrix thereof at same term. The child Ruth is the sole devisee. Louise is administering the estate under said qualification.

"Schultze, Jr., paid plaintiff the allowance for several months, including January, 1897, but no further, and the mother has since the divorce maintained and educated the child.

"On September 9, 1896, Schultze, Jr., conveyed to his father, H. Schultze, Sr., the property awarded him by said decree for a pretended consideration. This deed the court found to be with intent to hinder and delay plaintiff. H. Schultze, Sr., held the property in secret trust for his son until March 1, 1900, when, at his son's instance, he executed to H. Rilling a conveyance of certain property, viz., that situated in the city of San Antonio, being the Presa street property and sixteen other lots, reciting a consideration of $1500. Rilling took this deed knowing the facts that existed with relation to the conveyance of Schultze, Jr., to his father; the deed was not intended as an absolute conveyance to Rilling, but as between Schultze, Jr., who was the real owner, and Rilling, it was in fact a mortgage. The facts upon which this conclusion is founded are that Schultze, Jr., procured his father to make the deed to Rilling; the father received no consideration therefor, and the deed was not intended by the parties as an absolute conveyance; the consideration consisted in a judgment for $487.89 that Rilling had against Schultze, Jr., also the note provided for in the divorce decree of $500, of which there was then a balance of $400, and $19 interest, and $25 attorney's fee incurred in negotiating this transaction, and a check for $570 to H. Schultze, Jr., making in all $1501.89. It appears that $1.89 was then and there paid by Schultze, Jr., to Rilling, making the

amount $1500, and the next day an instrument was entered into between Rilling and Schultze, Jr., which recited that the latter desired to become the owner of the property and Rilling was willing to sell same to him upon certain conditions; therefore,

"1. Schultze agrees to pay Rilling therefor $1500, with interest after date, said $1500 to be paid in monthly installments of not less that $25, not later than the 15th day of the month, until the full sum of $1500 and interest shall have been paid.

"2. Schultze, Jr., agrees to pay all taxes, liens, incumbrances, if any, on the property, etc., if any, that exist or may accrue, to keep up certain insurance and make repairs, it being understood that if he fail in these things, Rilling might, at his option, pay taxes, premiums, or other charges, the same to be repaid by Schultze with interest.

"3. Upon Schultze, Jr., complying with his agreements, Rilling was to convey the property by special warranty or quitclaim to the former at his expense; provided, however, that should said Schultze fail to promptly make payment of any of the moneys herein agreed to be paid by him, or should fail to carry out any one or more of his covenants herein, then this contract shall at once be of no further force and effect, and may, at the option of Rilling, be canceled without further action, in which event all moneys paid by said Schultze shall be forfeited to Rilling as liquidated damages, it being understood that Schultze shall have and acquire no title whatever to said property until said sums of money shall have been paid in full, neither shall he be entitled to any possession thereof until such payment in full shall have been made, provided that said Schultze may, if he so desires, collect or cause to be collected, the rents and revenues of said property at his own expense, and same, when paid over to Rilling, to be credited on said $1500, interest, etc., agreed to be paid. It finally provided for a reasonable attorney's fee in favor of Rilling in case litigation should arise over this contract, or it should become necessary to resort to legal proceedings in respect thereto.

"After said conveyance of March 1, 1900, Rilling went into possession and collected the rents for fourteen months at $25 per month, and has paid out certain sums in expenses and received also certain sums from Schultze, Jr., as interest, and he has been in possession ever since.

"The child is about six years of age. The property other than the Presa street property does not rent and the latter alone is reasonably worth $3000. The day after the divorce decree, Caroline Schultze executed a deed to H. Schultze, Jr., conveying the property in controversy, expressing as consideration $10, the payment of the $500 debt to Rilling, and the further consideration of H. Schultze, Jr.'s, deeding to her certain property (presumably the property decreed to her by the divorce decree). The deed contains covenants of general warranty."

The plaintiff, Caroline Schultze, appealed to the Court of Civil Appeals and defendant Rilling filed cross-assignments of error. Louise Schultze, as executrix, neither appealed nor assigned errors. The Court

of Civil Appeals having affirmed the judgment, Caroline Schultze and Rilling each applied to this court for a writ of error and both applications have been granted. It is the rule of this court, when there are two applications made in the same case and we think there is error in one, to grant both, so that upon the final hearing we may have the whole case before us. The two applications in this case were granted because we were of opinion that that of Rilling pointed out error. We then thought that no error was shown as to Caroline Schultze and we still adhere to that conclusion. The well-considered opinion of the Court of Civil Appeals disposes of the questions presented by her appeal in a manner satisfactory to us and renders a further discussion of the points made by her unnecessary. We will therefore confine ourselves in this opinion to a consideration of the grounds of error specified in Rilling's application.

The trial court held that the purported conveyance from H. Schultze to Rilling was but a mortgage, and that the judgment awarded Caroline Schultze should have priority in payment as to the property therein described over the claims of Rilling attempted to be secured thereby, except as to $400 and interest, that being the balance due upon the $500 debt originally secured by a deed in trust on the property. This holding was affirmed by the Court of Civil Appeals. It is assigned by Rilling that the Court of Civil Appeals and the District Court erred in giving Mrs. Schultze priority of payment over any part of Rilling's claim, secured by the mortgage. It was upon that assignment that we granted the writ of error, and it presents the only question in the case which, in our opinion, calls for any additional discussion.

The question is a difficult one. But since it was found as a fact by the trial court that Rilling had notice of the fraud in the conveyance from H. Schultze, Jr., to H. Schultze, no question as to a bona fide purchase from the fraudulent grantee is involved. The inquiry is as to the right of the fraudulent grantee to give a mortgage upon the property conveyed to one who has notice of the fraud.

The statute declares all conveyances of property in fraud of creditors to be void, but it is well understood that this means that they are merely relatively void,—that is, voidable at the option of creditors who have been defrauded thereby. As between the grantor and grantee, such a conveyance is valid, and the grantor, by his deed, parts with all power of disposition over the property conveyed. The right of the defrauded creditor is merely to subject it to the payment of his debts. The fraudulent grantee may convey a good title to an innocent purchaser, but, with one exception, as against the rights of creditors, he can not convey to one who has notice of the fraud. The exception applies in case of a conveyance by the fraudulent grantee in payment or as security for the debt of a creditor who has been defrauded. That such conveyance may be made or such security given is held by the great weight of authority. Boyd v. Brown, 17 Pick., 453; Bank v. Cummins, 39 N. J. Eq., 577; Murphy v. Briggs, 89 N. Y., 446; Copenheaver v. Huffaker, 6 B. Mon., 18; Brown v. Webb, 20 Ohio, 389; same case, Webb v. Brown, 3

Ohio St., 246; Beam v. Bennett, 51 Mich., 148; Stark v. Ward, 3 Pa. St., 328; Butler v. White, 25 Minn., 433. The ground upon which the rule seems to rest is that the fraudulent grantor can assert no claim against the property, but that the creditors can, and that if a creditor can procure a satisfaction of his claim by a purchase of the property from the grantee or have the latter secure it by a mortgage of the property, it is not necessary for him to resort to legal proceedings. It seems reasonable to hold that the grantee may do what he may be compelled to do by suit; and that in such a case other creditors have no right to complain, since it is, in every such case, a race of diligence between them, and the one who gets the first lien is entitled to priority in payment. Some of the decisions seem to hold that the concurrence of the fraudulent grantor is necessary to the validity of the mortgage or sale by the grantee, but in Webb v. Brown, 3 Ohio State, cited above, it is distinctly held that his concurrence is not necessary. A fraudulent conveyance is valid as against the grantor and it is a matter wholly between the grantee and the creditors; therefore it would seem that the acquiescence or participation of the former is not essential. But since the grantor in this case procured the conveyance to be made and participated in the transaction, it is not necessary for us to decide the point.

We are of the opinion that the rights of the parties to this suit must be determined by the rules just announced. If the second transaction, as is alleged in the petition, was in furtherance of the original design or otherwise intended to defraud the plaintiff, then Rilling could claim no right under it. But the trial court did not find upon the issue, and the presumption is that the fact was not established by the evidence. We must then assume that the sole purpose of the second transaction was to secure an indebtedness a part of which previously existed and a part of which was then created. The first two items were the balance of a debt previously secured by a deed of trust, and an unsatisfied judgment against H. Schultze, Jr., and the balance was for an indebtedness created contemporaneously with the mortgage. As to the first item there is no difficulty. If the mortgage had been fraudulent and void in its entirety, this would not have affected the previous valid existing lien fixed upon it by the deed in trust. The difficulty arises as to the debt which was evidenced by a judgment. Whether this debt was in existence at the time of the conveyance from H. Schultze, Jr., to H. Schultze, the findings of the trial court do not disclose. But Rilling having taken the mortgage with notice of the fraud, in order to sustain it in whole or in part it was incumbent upon him to prove the facts which would have shown its validity. We are therefore of opinion that if the debt evidenced by the judgment was in existence when the fraudulent conveyance was executed, the burden was upon Rilling to establish the fact by evidence. It not having been established, we must treat the case as if the indebtedness arose after execution of the deed from the son to the father. Now the ground upon which the fraudulent grantee can mortgage the property to secure a creditor is that the conveyance is invalid as to such

creditor. But it is not invalid under our rule as to the subsequent creditors, and therefore they have no more rights with reference to the property than any other purchaser. The grantee can no more give a lien to a subsequent creditor who has notice of the fraud than he can sell to a purchaser with such notice. Very clearly the mortgage is not valid as to the debts created at the time the mortgage was executed, and since Rilling has failed to show that his judgment was for a debt which existed at the time of the execution of the fraudulent conveyance, the mortgage as to that debt must also be held void as to Caroline Schultze. If we had held that the mortgage was otherwise good as to the judgment, it would have been an embarrassing question whether the attempt to secure the new indebtedness would have avoided it as a whole. But the view we take of the case renders a decision of that question unnecessary.

We conclude that the judgments of the Court of Civil Appeals and of the District Court should be affirmed, and it is so ordered.

Each of the plaintiffs in error will pay the costs incurred by the writs of error respectively sued out by them.

*Affirmed.*